## VERNER v. BOOKMAN.

1. ADMINISTRATOR.—A JUDGMENT against an administrator, entered in book of abstracts, ascertaining and directing the payment of a final balance in a suit for an accounting, is a judgment against the administrator individually.

2. JUDGMENT—MORTGAGES—RENEWAL OF JUDGMENT.—A sale of land under a judgment obtained in 1879, and renewed within three years after its active energy has expired, divests the lien of a mortgage executed during the active energy of the judgment.

Before KLUGH, J., Lexington, February, 1898. Reversed.

Foreclosure by J. S. Verner, S. W. Melton, and Abney & Thomas *v.* Carroll Bookman, Walter S. Monteith, P. H. Haltiwanger, and Sallie A. Bookman. The Circuit decree is as follows:

This cause, which is a suit for foreclosure, came on for hearing in this Court at fall term, 1897, upon the pleadings and testimony taken and reported by a referee. It appears that the defendant, Carroll Bookman, on March 16, 1885, made his sealed note in favor of Levi Metz, in the following words: "$400. On the first day of January next, I promise to pay to Levi Metz, or order, the sum of $400, for value

received, with interest from date at the rate of ten per cent. per annum, the interest to be paid semi-annually." On the same day, he executed a mortgage of the lands described in the complaint, to secure the payment of the said note. A number of payments were made on the said note from time to time. On November 28, 1894, Metz transferred and assigned it and the mortgage to J. S. Verner, S. W. Melton, and Abney & Thomas, who are the plaintiffs in this action. W. S. Monteith, P. H. Haltiwanger, and Mrs. Sallie A. Bookman are made parties defendant, as having or claiming interest in the premises mortgaged, subordinate to the claim of the plaintiffs. The complaint alleged that the defendant, Monteith, was in possession of said premises, claiming to own them by virtue of a deed from the sheriff of Lexington County. It is alleged in the answer of said defendant, and appears from the testimony, that the interest claimed by him has been conveyed to Mrs. Sallie A. Bookman, and the plaintiffs have been allowed to amend their complaint so as to set forth this allegation in accordance with the fact. The complaint further alleges that Mrs. Bookman holds a mortgage senior in date to that of plaintiffs, but that it is satisfied, although not so marked on the record. Mrs. Bookman denies that her mortgage is satisfied, and all the answers deny that the plaintiffs' mortgage is a lien on the premises in question, but claim that its lien was divested by a sale of said lands by the sheriff under an execution issued upon a judgment older than the plaintiffs' mortgage.

It appears that Carroll Bookman was administrator of his father's estate, and that, about the year 1870, suit was brought against him as such administrator by one Jesse Fry, on a note on which his father had been surety. Other claims in large amounts were presented against the said estate, and the administrator filed his answer in the suit of Fry, showing that the estate was insolvent, and praying for an injunction against other suits, that the assets be marshalled, and that creditors be called in. An order was passed accordingly on October 30th, 1873, restraining creditors and

appointing a referee, "before whom all the creditors of said intestate are hereby ordered to establish their demands; and that he call in the creditors, * * * hear the evidence, and report the same to this Court; that he hear and report upon the accounts of the administrator, * * * and with leave to report any special matter." In pursuance of this order, the referee, on October 10, 1876, filed his report, showing assets in the hands of the administrator to the amount of $18,000; claims established amounting to $25,000, and recommending, among other things, that a fee of $1,000 be paid to Mr. Meetze as attorney for the estate. The cause was heard upon this report, and on September 26, 1879, a decree was passed confirming the report and ordering the administrator to pay out the funds in his hands in the manner recommended by the referee, including the fee of $1,000 to the counsel for the estate. This decree appears to have been duly filed in the clerk's office, as do also the other papers indicating the several steps in the proceeding leading up to the same; the judgment was enrolled, and appears as No. 408, in the book of "Abstract of Judgments," where it was entered in its proper serial order; and, so far as appears to the contrary, the administrator obeyed its mandates by paying out the funds as directed, with the exception of the counsel fee, which was only partly paid. Afterwards, Mr. Meetze assigned the balance of his said fee to Mrs. H. I. Benjamin. On September 22, 1892, a proceeding was commenced by the service of a summons on Carroll Bookman, to revive said judgment and make it a lien to the extent of the balance due on said counsel fee; and on the same day the defendant consented, in writing, that the Court make the order prayed for. No one else was made a party to said proceeding, although there were a number of mortgages and judgments junior in date to the Fry judgment, which were subsisting liens on the real estate of Carroll Bookman at the date of said summons. On September 23, 1892, the Court ordered and adjudged, "that the judgment of Jesse Fry, plaintiff, against Carroll Bookman, administrator, * * * be

revived, with like lien as the original, in the sum of $666.63, and that the applicant have leave to issue execution thereupon." Execution was issued upon said judgment, and subsequently, on salesday in February, 1893, the sheriff of Lexington County, under said execution, and also under a number of other executions issued upon judgments which were all junior in date and lien to the mortgage of the plaintiffs in this action, sold the lands described in the complaint herein. At said sale the said lands were bought by W. S. Monteith, who afterwards conveyed them to Mrs. Sallie A. Bookman, as above stated, and she is now in possession, and claims title to the same by virtue of the said conveyance. It is the aforesaid sale, under the execution of Mrs. Benjamin, which the defendants claim divested the lien of the plaintiffs' mortgage.

The first point which the plaintiffs make against the said sale as affecting their lien is, that the decree in the case of Fry *v.* Bookman, administrator, was never enrolled and entered up, so as to become a judgment having any lien whatsoever, until after the date of plaintiffs' mortgage. Testimony was offered to show that the decree was not recorded until the year 1887. The original decree bears an indorsement of the clerk showing that it was filed on the 26th of September, 1879, the day on which it was signed. It is not the recording of the judgment in the book of "Pleadings and Judgments" nor in the journal, which gives it a lien, but its entry in the book of "Abstract of Judgments." See Rev. Stats. (1893), sec. 783, which is the act of 1839, and Code, secs. 300, 301, 309. We have seen that this judgment was enrolled and entered in the book of "Abstract of Judgments" in its regular order, and there is nothing to show that it was not done at the time when the judgment was rendered. The presumption is, that the entry of the judgment was duly made, and it must be held to have become a lien from that time. Another point made by the plaintiffs is, that the judgment of Fry *v.* Bookman, administrator, was rendered against the defendant in his representa-

tive capacity only, and could not be a lien on his individual property. I was at first inclined to take that view, because the suit of Fry was simply an action upon a claim against the intestate. But upon a full examination of the record in that case, it appeared, as we have seen above, that it became, upon the filing of the answer of the administrator, by his own prayer, a suit for marshalling creditors and for accounting and settlement. The decree of the Court ascertained the final balance against the administrator, and directed its payment. His failure to pay, in obedience to said decree, was a *devastavit*. Execution against him, *de bonis propriis*, was the appropriate means for the enforcement of the judgment. *Rhodes* v. *Casey*, 20 S. C., 491, and the cases there cited. The remaining point made by the plaintiffs is, that the judgment of Fry v. Bookman, granting that it was a lien upon the individual property of the defendant, lost such lien at the expiration of ten years from its entry—that is to say, on the 26th of September, 1889; that from that time their mortgage took priority over it; and that its subsequent revival, on September 23, 1892, cannot give to the lien thus restored relation back so as to disturb the vested rights of the plaintiffs. The question presented arises out of the proviso to the act of 1873, Code of 1882, section 310, and has not been decided, although that act has been the subject of frequent judicial interpretation. The terms of that proviso are, that the plaintiff in a judgment may at any time within three years after its active energy has expired, revive the judgment, with like lien as in the original, and for a like period, by service of a summons on the debtor, requiring him to show cause, &c. That act was in force at the time when the judgment of Fry v. Bookman was recovered, and its terms apply to a proceeding to revive said judgment. In the case of *Ex parte Witte*, 32 S. C., 226, the judgment was revived before the ten years during which it had a lien expired, and it was held that such revival gave to it a continuous lien from the entry of the judgment, during the original period of ten years, and

also for the like period for which it was so revived. There are dicta in that decision which create the impression that even if the first period of ten years had expired, and the judgment had been revived at any time during the extra three years allowed by the act for reviving it, the restored lien would still have connected by relation back with the old lien, and have constituted a continuous lien from the original entry of the judgment. This seems to be by analogy to the case of a judgment which is vacated by the order of the Court, and its lien thus suspended, and afterwards, when the vacating order is rescinded, has its lien restored with relation to the date of original entry, so as to take rank over other liens which accrue in the interval. In such a case, the Court, by its own act, over which the creditor has no control, stops his lien, and, unless it allowed such relation afterwards, it would deprive him of the advantage which his diligence had won, and would thus frequently work an injustice. But in the case of a revival, under the act of the legislature, the creditor is free to take advantage or not of the privilege which the law gives him. If he allows his lien to expire, then the rights of other incumbrancers or purchasers attach, whether acquired while his lien was alive or after it has ceased to exist. If, now, he subsequently sets in motion the law, revives his judgment, and restores his lien, what is the effect on the rights of such incumbrancers or purchasers which have intervened between the expiration of his lien and its restoration, during a period when by his own act or, rather, failure to act, his judgment has no lien? In the case of *Woodward* v. *Woodward*, 39 S. C., 259, the judgment debtor conveyed his land to his brother during the interval when his creditor's lien was extinct, and the Court held that such conveyance took precedence of a sale by the sheriff under the judgment subsequently revived. In the case of *Kaminisky* v. *Trantham*, 45 S. C., 393, there was a judgment, then a mortgage, then a second judgment, then a second mortgage; afterwards the lien of the first judgment expired by the lapse of ten years.

from its entry, and, during the interval while it had no lien, a third judgment was recovered; thereafter proceedings were begun to revive the first judgment, pending which the land was sold under execution issued upon the third judgment. After the sale, the first judgment was decreed to be revived. It was held that the sale under the third judgment was referred to the second judgment, which was still active, and took the proceeds; that the lien of the second mortgage, being junior to that of the said second judgment, was divested; but that the first mortgage was still a lien on the land; and, although the first judgment had been revived, the purchaser at sheriff's sale was protected against its lien, while foreclosure was decreed against him for the amount of the mortgage debt. The result of these two cases is, that an innocent purchaser or incumbrancer, whose rights originate during an interval in which a senior judgment has no lien, by reason of its active energy having expired, will not be subordinated to the renewed lien of such judgment after its revival; that such incumbrancer or purchaser will take subject to existing liens, although they were junior to such judgment while it was active; and that the immunity afforded to such incumbrancer or purchaser against such senior judgment will extend also to the other existing liens.

To this extent the Court has gone in the determination of questions arising out of this proviso to the act of 1873. It does not dispose of the question involved in the present case. That question is this: A judgment creditor allowed his lien to expire; by his own volition he allowed three years to pass, and at almost the very last moment took steps, and, with the consent of his debtor, but without notice to any other creditor, revived his judgment. In the meantime, a mortgage was a subsisting lien which had been junior to the original lien of his judgment. Shall the lien of the revived judgment reach back through three years and connect with the original lien now dead, so as to deprive the mortgagee of those rights which the law by its own operation and the remissness of the judgment creditor had given him?

To allow such an effect is to place a premium on the laches of the judgment creditor. Had the mortgage been foreclosed during those three years, and the land sold, the purchaser would have taken good title as against this judgment, and yet it could not have claimed the proceeds of sale, because it had no lien. *Kaminisky* v. *Trantham, supra.* It cannot be said in this case that the mortgagee was wanting in diligence in not foreclosing during that time, and, therefore, also guilty of laches. The facts show that during these three years, the mortgagor was making payments on the mortgage sufficient to satisfy the mortgagee that his debt was safe, and to induce him to give that indulgence which is rather to be commended in a creditor than for him to press his debtor without mercy to the wall. In Ohio, it seems to have been decided that a judgment which has become dormant and lost its lien will not, upon being revived, take priority over a mortgage made during the period of its original lien. 12 A. & E. Enc. of Law, pages 117, 118, and notes. "Generally," quotes Mr. Justice McGowan, approvingly, from Freeman on Judgments, in the case of *Woodward* v. *Woodward, supra*, "the revival of a judgment operates prospectively only;" and while this doctrine is laid down more particularly with reference to conveyances, the principle applies equally to incumbrances. *Coombs* v. *Jordon*, 22 Am. Dec., 236, 271–2. To the same effect is Black on Judgments, at sec. 444, of vol. 1. This doctrine of the relation back of the lien of a judgment, is not favored, for the r eason, as said by Mr. Justice Gary, in delivering the opinion of the Court in the case of *Kaminisky* v. *Trantham*, above cited, that public policy and the spirit of the law aim at certainty; and it is allowed to apply only in special and exceptional cases where otherwise injustice and hardship would ensue. This cannot be deemed such an exceptional case, for, besides the notice of this mortgage lien afforded by the record, express notice was given at the sheriff's sale. I conclude that in this case the mortgage of the plaintiffs in a subsisting lien on the land in question, and that its pri-

ority, acquired when the senior judgment lost its active energy, has not been disturbed by the subsequent proceedings to revive said judgment and the sale by the sheriff.

One other point remains to be considered, and that is the claim by Mrs. Bookman that her mortgage is unsatisfied, and remains a lien on the land superior to that of the plaintiffs. She now holds the land under a conveyance from W. S. Monteith, who derived his title from the sale by the sheriff, already referred to. The doctrine is well established, that when a mortgagee buys the land covered by his mortgage otherwise than under process of foreclosure of his mortgage, his lien is merged in the larger interest which he takes by the conveyance of the legal title, and the debt is extinguished. *Agnew* v. *Railroad Co.*, 24 S. C., 18, and cases cited.

From this decree the defendants, except Carroll Bookman, appeal.

*Messrs. Bachman &* *Youmans*, for appellant, cite: *The decree in equity is a judgment against the administrator individually, and its lien has precedence:* 5 S. C., 270; 20 S. C., 493; 3 DeS., 206; Bail. Eq., 100, 319; 28 S. C., 80; 45 S. C., 326; 13 S. C., 259; 4 Rich. Eq., 58, 155; 10 S. C., 296; Code, 296; 5 Stat., 164; 9 Rich. Eq., 56; 15 S. C., 44; 19 S. C., 508; 28 S. C., 47; 30 S. C., 387; 15 Stat., 499, 871; Code 1882, 310; 43 S. C., 440, 256; 47 S. C., 255; 24 S. C., 404; 46 S. C., 490; 34 S. C., 452; 35 S. C., 612; 45 S. C., 602; 5 Rich. Eq., 269; 38 S. C., 149. *There is no foundation for charge of laches:* 43 S. C., 211; McM. Eq., 134; L. R. 6 H. L., 384; 28 S. C., 105. *Original judgment did not lose lien by revival:* 4 DeS., 202; 2 Strob., 218; 6 Rich., 372; 30 S. C., 388; 32 S. C., 226; 6 Rich., 373; 9 Watts & Serg., 189; 11 Pa. St., 419; 4 Watts, 424; 24 Am. Dec., 585; 25 *Id.*, 268; 32 S. C., 379, 383; 40 S. C., 264; 39 S. C., 263; 45 S. C., 406; 1 P. Wms., 340; 1 Coke, 99b. *There was no merger:* 24 S. C., 33.

*Mr. J. A. Muller*, contra, adopts the Circuit decree as being a full and clear statement of the case, and authorities.

Oct. 22, 1898. The opinion of the Court was delivered by

MR. JUSTICE JONES. We concur with the Circuit Court that the decree in the case of Fry *v.* Bookman, administrator, signed and filed September 26, 1879, and entered in the book of abstract of judgments, ascertaining and directing the payment of a final balance against the administrator, in a suit for accounting and settlement of the estate, was a judgment against Carroll Bookman individually. *Rhodes* v. *Casey*, 20 S. C., 493.

The main question presented by this appeal is, whether this judgment of September 26th, 1879, revived in favor of Mrs. H. I. Benjamin, assignee, September 23d, 1892, was a lien on the mortgaged land herein, in February, 1893, when said land was sold under said judgment by the sheriff to Monteith, who subsequently conveyed to Mrs. Bookman, superior to the lien of the mortgage herein sought to be foreclosed, executed in 1885. The decree of the Circuit Court on this point appears in the official report.

At the time the judgment was entered, the act of 1873 was in force. The act, 15 Stat., 498, provided as follows: "Final judgments hereafter entered in any court of record in this State shall constitute a lien upon the real estate of the judgment debtor * * * for a period of ten years from the date of entry of such judgments * * * *Provided, further*, That the plaintiff in such judgment may, at any time in three years after its active energy has expired, revive the judgment, with like liens as in the original for a like period, by the service of a summons on the debtor, as provided by law, requiring him to show cause, if any he can, at the next term of the Court for his county, why such judgment should not be revived; and if no good cause be shown to the contrary, then it shall be decreed that such judgment is revived according to the force, form, and effect of the former recovery." We are of opinion that a judg-

ment, revived under this act, within three years after its active energy has expired, has, upon its revival, a continuous lien from the date of its entry, and preserves its rank of priority as against all liens existing against the judgment debtor during the period of its original active energy. We cannot do better than reproduce what Mr. Justice McGowan said on this subject, in *Ex parte Witte Bros.*, 32 S. C., 228, as follows: "We have always supposed that a *scire facias* on judgment must pursue the terms of the judgment; that it is a continuance of the action and must conform to the record; that the authority to issue an execution on a judgment is derived from the original judgment, which, revived, continues its vitality with lien and other incidents from the time of its rendition.    See *Ingram* v. *Belk*, 2 Strob., 208; *Parnell* v. *James*, 6 Rich., 373; Dougherty's Estate, 42 Amer. Dec., 326; *Irwin* v. *Nixon*, 57 Am. Dec., 559. In the case from 6 Rich., Judge Withers forcibly said: 'When *scire facias* is issued between the same parties to a judgment, it is * * * manifestly not an original proceeding, but a continuance of a former suit. * * * If the first judgment be merged, this might greatly disturb the plaintiff's relative priority of lien, &c.'    It seems to me that any other interpetation of the act of 1873 would necessarily result in great confusion, surprise, and injustice to parties who have been resting upon what was believed to be the acknowledged law—that diligence was rewarded, and that a judgment regularly 'revived,' continues to have a lien from its original entry."    In the case of *Woodward* v. *Woodward*, 39 S. C., 264, these general views were reaffirmed, but an exception was made in the case of an innocent purchaser from the judgment debtor, and it was held that such a purchaser of the judgment debtor's land, after the expiration of the judgment's active energy, but before its revival, was not affected by the subsequent revival.    But the Court reiterated the principle announced in this case as follows: "It seems that the doctrine as to the effect of a revival under the circumstances stated, leaves untouched the rights of the

parties to the judgment, and the relative rank of all liens acquired before the judgment lost its active energy, and protects only the rights of innocent third parties; in the view as stated, 'that it would be against principle, and work manifest injustice, to give it this retrospective operation so as to extinguish the intermediately acquired rights of third persons.' " The case of *Kaminisky* v. *Trantham*, 45 S. C., 393, does not lead to a contrary view. In that case the Court held that a purchaser at a sale under a "junior" judgment, obtained after a "senior" judgment had lost its active energy, the sale being made before the revival of the senior judgment, could not refer his title to the senior judgment so as to defeat the lien of an intermediate mortgage existing before the senior judgment lost its active energy. In that case there was a very vigorous dissent by the Chief Justice, stressing the point that the lien of the senior judgment was continuous from its entry, because revived according to law, and that, therefore, the sale under the junior judgment was referable to the senior judgment. That case was but an application of the doctrine that the revival of a judgment within the time allowed by the act of 1873 could not relate back to the original entry, so as to defeat or affect liens and rights of purchasers *created* and *intervening* between the expiration of its original active energy and its revival. The law required the proceeds of the sale of real estate by a sheriff to be applied "to any judgment having *prior lien* thereon." The real point in Kaminisky's case was not so much whether the Pegues or senior judgment was a continuous lien on the land bought by Hay, but whether it was a *prior* lien to the lien of the junior judgment under which Hay bought. The latter judgment, while junior in point of time, was prior in point of right and lien to the Pegues judgment, because it was *created* after the Pegues judgment had lost its energy and before its revival; and, therefore, the sale under the junior judgment having *prior* lien could not be referred to the judgment, which, though senior in point of its original entry, was not a prior lien.

In the case at bar the mortgage lien was created before, not after, the judgment lost its original energy. No liens, or rights of purchasers created during the dormancy of the judgment, are involved in this case. The judgment originally senior in time and lien to the mortgage, having been revived in the time allowed by law, according to the force, form and effect of the former recovery, its revived lien, under the act of 1873, relates back to its original entry, and so preserves its rank of lien according to the status existing when its active energy expired or was suspended. The legislature so construed the act of 1873, for in 1885 it enacted that "such (revival) lien shall not revert back to the date of the original entry of such judgment." Our conclusion renders it unnecessary to consider the other grounds of appeal.

The judgment of the Circuit Court is reversed.